```
PKC:PT
F#2012R00294
```
**M12-0382**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

SHAKA STAYMAN,

             Defendant.

- - - - - - - - - - - - - - - - - - -X

**FILED UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANT
(T. 18, U.S.C., § 1343)

EASTERN DISTRICT OF NEW YORK, SS:

      Christopher Martinez, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      Upon information and belief, there is probable cause to believe that in or about and between March 2012 and April 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHAKA STAYMAN, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly and intentionally transmit and cause to be transmitted writings, signs, signals, pictures and sounds, by means of wire

2

communication in interstate commerce, for the purpose of executing and attempting to execute such a scheme and artifice.

(Title 18, United States, Code, Section 1343)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the FBI and have served in that capacity for approximately two years. I am in a squad responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for various types of white-collar crime, including fraud. During the course of my law enforcement career, I have conducted or participated in surveillance, witness interviews, the execution of search warrants, debriefings of informants and reviews of taped conversations and financial records. The information set forth in this affidavit is based upon my review of documentary evidence, records and audio recordings, and my discussions with other law enforcement agents, including officers of the New York City Police Department.

2. In this affidavit, I have described portions of certain conversations that were consensually recorded by a financial institution during the normal course of that financial

---

[1]    Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to obtain a warrant for the arrest of the defendant, I have not described all of the relevant facts of which I am aware.

3

institution's business. Any transcripts of such recorded conversations are preliminary and in draft form. As such, the summaries set forth in this affidavit are preliminary in nature.

3. Since late 2011, agents in my squad have been investigating a scheme that involves identity theft and wire fraud, among other crimes. The perpetrators of this scheme have impersonated the holders of accounts at various financial institutions and withdrawn funds from accounts, such as annuities and retirement funds, that belong to various victims.

4. As part of this investigation, on February 22, 2012, the government obtained an order signed by the Honorable Lois Bloom, United States Magistrate Judge for the Eastern District of New York, for a pen register and trap and trace device for a particular cellular telephone number (the "CRIMINAL TELEPHONE"). Telephone company records show that the CRIMINAL TELEPHONE is subscribed to "Dorothy Gray, 16411 Barnesville Street, Zebulon, Georgia." One of the victims of the above-described criminal scheme who had funds improperly withdrawn from a financial institution ("Financial Institution #1") is named Dorothy Gray. However, this Dorothy Gray resides in Queens, New York and the Dominican Republic, not Georgia. A New York City Police Officer who is assisting the FBI in this investigation has spoken on the telephone with the Dorothy Gray who is a resident of Queens, New York and the Dominican Republic. Dorothy Gray

4

told the officer that she had never knowingly subscribed to the CRIMINAL TELEPHONE.[2/]

5. On March 13, 2012, the CRIMINAL TELEPHONE placed a telephone call to a financial institution ("Financial Institution #2"), which an employee of Financial Institution #2 ("Employee #1") answered at Financial Institution #2's Richmond, Virginia offices. This call was recorded by Financial Institution #2 in the normal course of its business, and I have listened to it. During this call, a male purported to be an accountholder (the "Victim") who held an annuity account at Financial Institution #2. The caller asked Employee #1 how much money the Victim could withdraw from the Victim's annuity account without penalty, as well as how large a penalty the Victim would incur if he withdrew $30,000 from his annuity account.

6. Also during the March 13 call, Employee #1 told the caller that in order to effectuate a funds transfer the caller had to transmit to Financial Institution #2 by facsimile a form requesting that the funds be transferred. At the caller's request, Employee #1 transmitted a blank copy of the form to an e-mail address named by the caller. Employee #1 also told the caller that in order for the funds to be directly deposited to another bank account, the caller would have to send in a voided

---

[2/] The officer spoke with Dorothy Gray by telephone rather than in person because Gray is not returning from the Dominican Republic to Queens until May or June 2012.

5

check for the receiving account. The caller asked if the check had to be notarized, and Employee #1 said that it did not have to be notarized. The caller told Employee #1 that he had recently had a stroke, so his signature may appear different from the signature on file with Financial Institution #2, and asked if that would be a problem. Employee #1 told him it would not be a problem.

7. On March 14, 2012, Financial Institution #2 received the form described above via a facsimile sent from the CRIMINAL TELEPHONE. The form was filled out by hand, purported to be signed by the Victim and requested that $50,000 be transferred from the Victim's account at Financial Institution #2 to an account at another financial institution ("Financial Institution #3"). Bank records show that the account at Financial Institution #3 into which the Victim's funds were to be transferred was held not solely in the name of the Victim, but rather held jointly in the names of the Victim and "Carlton Nelson." This account at Financial Institution #3 which was held in the names of the Victim and Nelson was opened in February 2012 in Brooklyn, New York.

8. After becoming suspicious of this funds transfer request, investigators working for Financial Institution #2 attempted to speak with the Victim in person, but when they approached him they were unable to communicate with him because

6

he appeared to be mentally incapacitated. A neighbor of the Victim told the investigators that the Victim was indeed mentally incapacitated. Financial Institution #2 did not transfer the funds as requested during the March 13, 2012 telephone call. The CRIMINAL TELEPHONE attempted to contact Financial Institution #2 a number of times during the following days, but Financial Institution #2 did not pick up the calls.

9. On March 30, 2012, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge for the Eastern District of New York, signed a search warrant and entered an order authorizing the government to obtain ongoing Global Positioning Systems ("GPS") tracking information for the CRIMINAL TELEPHONE and cellular telephone tower site information for the CRIMINAL TELEPHONE (collectively, the "LOCATION INFORMATION") for a period of thirty days. This information enabled the government to determine the location of the CRIMINAL TELEPHONE when it was in use.

10. On April 2, 2012, an employee of Financial Institution #2 ("Employee #2") placed a call to the CRIMINAL TELEPHONE and left a voicemail asking the Victim to call Financial Institution #2 about the Victim's funds transfer request. At that time, the LOCATION INFORMATION showed that the CRIMINAL TELEPHONE was located in Brooklyn, New York. Later on April 2, 2012, while the CRIMINAL TELEPHONE remained in Brooklyn,

7

a male used the CRIMINAL TELEPHONE to place a call to Financial Institution #2. Employee #2 answered the call, which was recorded, in Richmond, Virginia. I have listened to the recording of this call, and the voice of the male who used the SUBJECT TELEPHONE to make this call on April 2, 2012 was the same voice as the male who made the March 13, 2012 call to Financial Institution #2 described above. During the April 2, 2012 call, the caller again purported to be the Victim. Employee #2 directed the caller to again transmit to Financial Institution #2 by facsimile a signed form requesting that the $50,000 be transferred to the account at Financial Institution #3. Employee #2 directed the user of the CRIMINAL TELEPHONE to transmit the completed form to a different facsimile number, one which was in fact controlled by law enforcement (the "law enforcement fax number").

11. Through the LOCATION INFORMATION for the CRIMINAL TELEPHONE, the government determined that during the evening of April 3, 2012, the CRIMINAL TELEPHONE traveled from the New York City area to Atlanta, Georgia, leaving the New York area at approximately 8:00 p.m. and arriving in the Atlanta area at approximately 10:40 p.m. A review of airline records showed that the defendant SHAKA STAYMAN traveled on a flight which departed La Guardia Airport in New York City at approximately 8:00 p.m. on

8

April 3, 2012 and arrived at Hartsfield Airport in Atlanta at approximately 10:40 p.m. the same evening.

12. On April 4, 2012, at approximately 11:30 a.m., the law enforcement fax number received a facsimile of the form requesting that $50,000 be transferred from the Victim's account at Financial Institution #2. This form again purported to be signed by the Victim.

13. On April 16, 2012, a DeKalb County, Georgia police officer (the "Officer") approached the defendant SHAKA STAYMAN at his residence in the Atlanta area. The Officer asked him whether she could speak with him about an automobile accident that purportedly took place in the Atlanta area on April 2, 2012 involving a Porsche Cayenne automobile that resembled an automobile owned by STAYMAN. STAYMAN identified himself as "Mr. Stayman," stated that he was in an accident on April 14, but not on April 2, and showed the Officer minor damage on his Porsche Cayenne automobile. STAYMAN also told the Officer that he was in New York on April 2, 2012, and gave the Officer a signed, handwritten statement to that effect as well as his flight itinerary.

14. During the Officer's encounter with STAYMAN, law enforcement called the CRIMINAL TELEPHONE. Also during the encounter, the Officer heard two different telephone "ringtones" coming from another room in STAYMAN's residence, signaling that

9

~~Stayman had at least two different telephones~~. The Officer heard one of those telephones ring at the time law enforcement called the CRIMINAL TELEPHONE. STAYMAN did not answer the call to the CRIMINAL TELEPHONE during his encounter with the Officer.

15. During her April 16, 2012 encounter with the defendant SHAKA STAYMAN, the Officer recorded STAYMAN's voice with a hidden recording device. The Officer also retained STAYMAN's handwritten statement about the automobile accident. I have listened to the recording the Officer made of her encounter with STAYMAN on April 16, 2012, and I heard STAYMAN's voice on the recording. The voice of STAYMAN on the April 16 recording is the same voice as the male voice that called Financial Institution #2 using the CRIMINAL TELEPHONE on March 13, 2012 and April 2, 2012. I have also seen the handwriting of the written statement STAYMAN gave the Officer on April 16, 2012. This handwriting appears identical to the handwriting used to fill in the form that was faxed to Financial Institution #2 on March 14, 2012,[3] requesting that $50,000 be transferred from the Victim's Account at Financial Institution #2 to an account held in the name of the Victim and Carlton Nelson at Financial Institution #3.

---

[3] I have not viewed the form which was sent by facsimile to the law enforcement fax number on April 4, 2012, so I have not compared the handwriting on that form to the handwriting on the form Stayman gave to the Officer on April 16, 2012.

10

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of the defendant SHAKA STAYMAN, so that he may be dealt with according to law. Your deponent further requests that this Affidavit and the arrest warrant be filed under seal until further order of the Court to prevent the flight of the target, destruction of evidence and tampering with witnesses.

_____
CHRISTOPHER MARTINEZ
Special Agent
Federal Bureau of Investigation

Sworn to before me this
17th day of April, 2012

_____
THE HON.
UNITED ST                    ;E
EASTERN L