JG:PT
F.#2012R00294

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

SHAKA STAYMAN,

              Defendant.

- - - - - - - - - - - - - - -X

**FILE UNDER SEAL**

A F F I R M A T I O N

12 M 382

        Paul Tuchmann affirms and says:

        1.   I am an Assistant United States Attorney in the Office of LORETTA E. LYNCH, United States Attorney for the Eastern District of New York.

        2.   I make this application pursuant to Title 18, United States Code, Section 3148, respectfully requesting that the Court issue a warrant for the arrest of the above-named defendant SHAKA STAYMAN for revocation of an order of release.

        3.   The warrant for arrest is being requested based on the defendant SHAKA STAYMAN's commission of a crime while on pre-trial release.

        4.   On April 17, 2012, the defendant SHAKA STAYMAN was arrested in the Northern District of Georgia pursuant to an arrest warrant and complaint issued by this Court.  The complaint, which is attached hereto as Exhibit A and incorporated herein by reference, charged him with committing wire fraud in violation of

Title 18, United States Code, Section 1343. On April 18, 2012, STAYMAN was arraigned on a removal complaint in the Northern District of Georgia and released to make an initial appearance before this Court. On April 23, 2012, STAYMAN made an initial appearance in this Court on the complaint. At that appearance, the Hon. Roanne L. Mann released the defendant on a $35,000 bond secured by STAYMAN's father's signature. The terms of the bond permitted STAYMAN to travel to and from the Eastern District of New York and, among other places, the Northern District of Georgia. As a standard condition of the defendant's pre-trial release, STAYMAN agreed not to commit any more crimes.

5.    The criminal complaint attached as Exhibit A details the defendant SHAKA STAYMAN's participation in a scheme to defraud a financial institution (described as "Financial Institution #2"). In part and substance, the complaint alleges that STAYMAN improperly obtained the identity of another person (identified as the "Victim") and on March 12, 2012 placed a telephone call to Financial Institution #2 while impersonating the Victim. The complaint further alleges that as part of the scheme, STAYMAN caused a facsimile to be sent to Financial Institution #2 purporting to be signed by the Victim and asking that $50,000 be transferred from the Victim's account at Financial Institution #2 to an account at another financial institution ("Financial

Institution #3") held in the name of the Victim and of "Carlton Nelson."

6.     I have been informed by Special Agent Ryan T. Stinson of the Federal Bureau of Investigation ("FBI"), who is responsible for investigating this case, that after the defendant SHAKA STAYMAN's arrest in the Northern District of Georgia on April 17, 2012, he waived his Miranda rights and made statements to agents. Among the statements STAYMAN made to agents, including Special Agent Stinson, were admissions that he had improperly obtained the Victim's account information and that it was he who had placed the telephone call to Financial Institution #2 that is described in Exhibit A.  STAYMAN further admitted that he had also sent the facsimile in furtherance of the scheme described in Exhibit A.

7.     I have further been informed by Special Agent Stinson that Financial Institution #2 has provided him with a recording of a telephone call made to Financial Institution #2 on May 21, 2012 (the "May 21 Call") from telephone number 404-452-0260 (the "Stayman May Number").    During this call, the caller identified himself as an accountholder at Financial Institution #2 ("Victim #2") and provided personal identifying information for Victim #2.  Special Agent Stinson (who has both listened to the March 13, 2012 call described in the complaint and has spoken in person and on the telephone with STAYMAN on multiple occasions) has

identified the voice of the caller on this May 21 call as that of
STAYMAN.    During the May 21 call, STAYMAN asked for a funds
transfer form to be emailed to a particular email address, which an
employee of Financial Institution #2 did pursuant to STAYMAN's
request.

        8.    Financial Institution #2 has provided Special Agent
Stinson with a copy of a filled-out funds transfer form requesting
the transfer of Victim #2's funds from Financial Institution #2 to
another financial institution.    This form was sent by facsimile
from a Fedex Office location in the 404 area code to Financial
Institution #2 on May 21, 2012.    The 404 area code is associated
with Atlanta, Georgia, within the Northern District of Georgia.
Special Agent Stinson also confirmed that he has spoken with
STAYMAN a number of times while STAYMAN has been on pre-trial
release, and STAYMAN told Stinson he was in Atlanta during the
period including May 21 through May 23, 2012.    Also sent by
facsimile with the May 21, 2012 transfer request form was a copy of
a check for an account held in both the name of Victim #2 and of
another person.    As noted in the complaint, when the defendant
SHAKA STAYMAN faxed a funds transfer request form to Financial
Institution #2 in March 2012, he requested a transfer of $50,000
from the Victim's account and included a check for an account held
in both the name of the Victim and of another person.

9.   Financial Institution #2 has also provided Special Agent Stinson with a recorded telephone call made from the Stayman May Number to Financial Institution #2 on May 23, 2012 (the "May 23 Call"). During this May 23 call, the caller (whom Special Agent Stinson recognized by voice as the defendant SHAKA STAYMAN) again identified himself as Victim #2 and provided personal identifying information for Victim #2. Also during this May 23 call, an employee of Financial Institution #2 confirmed to STAYMAN that on May 21, 2012, Financial Institution #2 had electronically transferred $50,000 from Victim #2's account at Financial Institution #2 to an account an another financial institution specified in the funds transfer form.

10.   Corporate security at Financial Institution #2 has informed Special Agent Stinson that on May 22, 2012, a telephone number used by Financial Institution #2 corporate security (the "Corporate Security Number") received a telephone call from the Stayman May Number, but the caller hung up before speaking. Financial Institution #2 corporate security had previously given the Corporate Security Number, rather than its regular customer service telephone number, to STAYMAN in March 2012, as part of law enforcement's efforts to stop the crime described in the complaint. Financial Institution #2 only gives the Corporate Security Number to individuals it suspects of engaging in fraud.

6

WHEREFORE, it is respectfully requested that the Court issue a warrant for the arrest of the defendant SHAKA STAYMAN. It is further respectfully requested that this Affirmation and the arrest warrant be filed under seal until further order of the Court to prevent the flight of the target, destruction of evidence and tampering with witnesses.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:    Brooklyn, New York
          June 4, 2012

                                   Paul Tuchmann
                                   Assistant U.S. Attorney
                                   (718)254-6294

# EXHIBIT A

PKC:PT
F#2012R00294

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M12-0382**

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

SHAKA STAYMAN,

          Defendant.

- - - - - - - - - - - - - - - - - - X

<u>FILED UNDER SEAL</u>

COMPLAINT AND
AFFIDAVIT IN SUPPORT
<u>OF ARREST WARRANT</u>
(T. 18, U.S.C., § 1343)

EASTERN DISTRICT OF NEW YORK, SS:

        Christopher Martinez, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        Upon information and belief, there is probable cause to believe that in or about and between March 2012 and April 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHAKA STAYMAN, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly and intentionally transmit and cause to be transmitted writings, signs, signals, pictures and sounds, by means of wire

2

communication in interstate commerce, for the purpose of executing and attempting to execute such a scheme and artifice.

(Title 18, United States, Code, Section 1343)

The source of your deponent's information and the grounds for his belief are as follows:[1/]

1.  I am a Special Agent with the FBI and have served in that capacity for approximately two years.  I am in a squad responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for various types of white-collar crime, including fraud.  During the course of my law enforcement career, I have conducted or participated in surveillance, witness interviews, the execution of search warrants, debriefings of informants and reviews of taped conversations and financial records.  The information set forth in this affidavit is based upon my review of documentary evidence, records and audio recordings, and my discussions with other law enforcement agents, including officers of the New York City Police Department.

2.  In this affidavit, I have described portions of certain conversations that were consensually recorded by a financial institution during the normal course of that financial

---

[1/]    Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause to obtain a warrant for the arrest of the defendant, I have not described all of the relevant facts of which I am aware.

3

institution's business.  Any transcripts of such recorded
conversations are preliminary and in draft form.  As such, the
summaries set forth in this affidavit are preliminary in nature.

      3.  Since late 2011, agents in my squad have been
investigating a scheme that involves identity theft and wire
fraud, among other crimes.  The perpetrators of this scheme have
impersonated the holders of accounts at various financial
institutions and withdrawn funds from accounts, such as annuities
and retirement funds, that belong to various victims.

      4.  As part of this investigation, on February 22,
2012, the government obtained an order signed by the Honorable
Lois Bloom, United States Magistrate Judge for the Eastern
District of New York, for a pen register and trap and trace
device for a particular cellular telephone number (the "CRIMINAL
TELEPHONE").  Telephone company records show that the CRIMINAL
TELEPHONE is subscribed to "Dorothy Gray, 16411 Barnesville
Street, Zebulon, Georgia."  One of the victims of the above-
described criminal scheme who had funds improperly withdrawn from
a financial institution ("Financial Institution #1") is named
Dorothy Gray.  However, this Dorothy Gray resides in Queens, New
York and the Dominican Republic, not Georgia.  A New York City
Police Officer who is assisting the FBI in this investigation has
spoken on the telephone with the Dorothy Gray who is a resident
of Queens, New York and the Dominican Republic.  Dorothy Gray

4

told the officer that she had never knowingly subscribed to the CRIMINAL TELEPHONE.[2/]

5. On March 13, 2012, the CRIMINAL TELEPHONE placed a telephone call to a financial institution ("Financial Institution #2"), which an employee of Financial Institution #2 ("Employee #1") answered at Financial Institution #2's Richmond, Virginia offices. This call was recorded by Financial Institution #2 in the normal course of its business, and I have listened to it. During this call, a male purported to be an accountholder (the "Victim") who held an annuity account at Financial Institution #2. The caller asked Employee #1 how much money the Victim could withdraw from the Victim's annuity account without penalty, as well as how large a penalty the Victim would incur if he withdrew $30,000 from his annuity account.

6. Also during the March 13 call, Employee #1 told the caller that in order to effectuate a funds transfer the caller had to transmit to Financial Institution #2 by facsimile a form requesting that the funds be transferred. At the caller's request, Employee #1 transmitted a blank copy of the form to an e-mail address named by the caller. Employee #1 also told the caller that in order for the funds to be directly deposited to another bank account, the caller would have to send in a voided

---

[2/]   The officer spoke with Dorothy Gray by telephone rather than in person because Gray is not returning from the Dominican Republic to Queens until May or June 2012.

check for the receiving account.  The caller asked if the check had to be notarized, and Employee #1 said that it did not have to be notarized.  The caller told Employee #1 that he had recently had a stroke, so his signature may appear different from the signature on file with Financial Institution #2, and asked if that would be a problem.  Employee #1 told him it would not be a problem.

   7.   On March 14, 2012, Financial Institution #2 received the form described above via a facsimile sent from the CRIMINAL TELEPHONE.  The form was filled out by hand, purported to be signed by the Victim and requested that $50,000 be transferred from the Victim's account at Financial Institution #2 to an account at another financial institution ("Financial Institution #3").  Bank records show that the account at Financial Institution #3 into which the Victim's funds were to be transferred was held not solely in the name of the Victim, but rather held jointly in the names of the Victim and "Carlton Nelson."  This account at Financial Institution #3 which was held in the names of the Victim and Nelson was opened in February 2012 in Brooklyn, New York.

   8.   After becoming suspicious of this funds transfer request, investigators working for Financial Institution #2 attempted to speak with the Victim in person, but when they approached him they were unable to communicate with him because

he appeared to be mentally incapacitated.  A neighbor of the
Victim told the investigators that the Victim was indeed mentally
incapacitated.  Financial Institution #2 did not transfer the
funds as requested during the March 13, 2012 telephone call.  The
CRIMINAL TELEPHONE attempted to contact Financial Institution #2
a number of times during the following days, but Financial
Institution #2 did not pick up the calls.

   9.   On March 30, 2012, the Honorable Ramon E. Reyes,
Jr., United States Magistrate Judge for the Eastern District of
New York, signed a search warrant and entered an order
authorizing the government to obtain ongoing Global Positioning
Systems ("GPS") tracking information for the CRIMINAL TELEPHONE
and cellular telephone tower site information for the CRIMINAL
TELEPHONE (collectively, the "LOCATION INFORMATION") for a period
of thirty days.  This information enabled the government to
determine the location of the CRIMINAL TELEPHONE when it was in
use.

   10.  On April 2, 2012, an employee of Financial
Institution #2 ("Employee #2") placed a call to the CRIMINAL
TELEPHONE and left a voicemail asking the Victim to call
Financial Institution #2 about the Victim's funds transfer
request.  At that time, the LOCATION INFORMATION showed that the
CRIMINAL TELEPHONE was located in Brooklyn, New York.  Later on
April 2, 2012, while the CRIMINAL TELEPHONE remained in Brooklyn,

a male used the CRIMINAL TELEPHONE to place a call to Financial
Institution #2. Employee #2 answered the call, which was
recorded, in Richmond, Virginia. I have listened to the
recording of this call, and the voice of the male who used the
SUBJECT TELEPHONE to make this call on April 2, 2012 was the same
voice as the male who made the March 13, 2012 call to Financial
Institution #2 described above. During the April 2, 2012 call,
the caller again purported to be the Victim. Employee #2
directed the caller to again transmit to Financial Institution #2
by facsimile a signed form requesting that the $50,000 be
transferred to the account at Financial Institution #3. Employee
#2 directed the user of the CRIMINAL TELEPHONE to transmit the
completed form to a different facsimile number, one which was in
fact controlled by law enforcement (the "law enforcement fax
number").

11. Through the LOCATION INFORMATION for the CRIMINAL
TELEPHONE, the government determined that during the evening of
April 3, 2012, the CRIMINAL TELEPHONE traveled from the New York
City area to Atlanta, Georgia, leaving the New York area at
approximately 8:00 p.m. and arriving in the Atlanta area at
approximately 10:40 p.m. A review of airline records showed that
the defendant SHAKA STAYMAN traveled on a flight which departed
La Guardia Airport in New York City at approximately 8:00 p.m. on

8

April 3, 2012 and arrived at Hartsfield Airport in Atlanta at
approximately 10:40 p.m. the same evening.

12.   On April 4, 2012, at approximately 11:30 a.m., the
law enforcement fax number received a facsimile of the form
requesting that $50,000 be transferred from the Victim's account
at Financial Institution #2.  This form again purported to be
signed by the Victim.

13.   On April 16, 2012, a DeKalb County, Georgia police
officer (the "Officer") approached the defendant SHAKA STAYMAN at
his residence in the Atlanta area.  The Officer asked him whether
she could speak with him about an automobile accident that
purportedly took place in the Atlanta area on April 2, 2012
involving a Porsche Cayenne automobile that resembled an
automobile owned by STAYMAN.  STAYMAN identified himself as "Mr.
Stayman," stated that he was in an accident on April 14, but not
on April 2, and showed the Officer minor damage on his Porsche
Cayenne automobile.  STAYMAN also told the Officer that he was in
New York on April 2, 2012, and gave the Officer a signed,
handwritten statement to that effect as well as his flight
itinerary.

14.   During the Officer's encounter with STAYMAN, law
enforcement called the CRIMINAL TELEPHONE.  Also during the
encounter, the Officer heard two different telephone "ringtones"
coming from another room in STAYMAN's residence, ~~signaling that~~

~~Stayman had at least two~~ different telephones. The Officer heard
one of those telephones ring at the time law enforcement called
the CRIMINAL TELEPHONE. STAYMAN did not answer the call to the
CRIMINAL TELEPHONE during his encounter with the Officer.

15. During her April 16, 2012 encounter with the
defendant SHAKA STAYMAN, the Officer recorded STAYMAN's voice
with a hidden recording device. The Officer also retained
STAYMAN's handwritten statement about the automobile accident. I
have listened to the recording the Officer made of her encounter
with STAYMAN on April 16, 2012, and I heard STAYMAN's voice on
the recording. The voice of STAYMAN on the April 16 recording is
the same voice as the male voice that called Financial
Institution #2 using the CRIMINAL TELEPHONE on March 13, 2012 and
April 2, 2012. I have also seen the handwriting of the written
statement STAYMAN gave the Officer on April 16, 2012. This
handwriting appears identical to the handwriting used to fill in
the form that was faxed to Financial Institution #2 on March 14,
2012,[1] requesting that $50,000 be transferred from the Victim's
Account at Financial Institution #2 to an account held in the
name of the Victim and Carlton Nelson at Financial Institution
#3.

---

[1]  I have not viewed the form which was sent by facsimile to
the law enforcement fax number on April 4, 2012, so I have not
compared the handwriting on that form to the handwriting on the
form Stayman gave to the Officer on April 16, 2012.

10

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of the defendant SHAKA STAYMAN, so that he may be dealt with according to law. Your deponent further requests that this Affidavit and the arrest warrant be filed under seal until further order of the Court to prevent the flight of the target, destruction of evidence and tampering with witnesses.

_____
CHRISTOPHER MARTINEZ
Special Agent
Federal Bureau of Investigation


_____



UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK